# IN THE COURT OF APPEALS OF IOWA

No. 14-1227
Filed February 11, 2015

IN THE INTEREST OF M.L.-H.,
Minor Child,

J.L.-T., Father,
Appellant,

F.H., Mother,
Appellant,

M.L.-H., Minor Child,
Appellant.

_____

Appeal from the Iowa District Court for Howard County, Alan Allbee, Associate Juvenile Judge.

A mother, father, and child appeal the juvenile court's order adjudicating the child in need of assistance. **AFFIRMED ON ALL APPEALS.**

Rockne O. Cole of Cole & Vondra, L.L.P., Iowa City, for appellant father.

Kevin E. Schoeberl of Story & Schoeberl Law Firm, Cresco, for appellant mother.

Thais Ann Folta of Elwood, O'Donohoe, Braun & White, L.L.P., Cresco, for appellant minor child.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, and Alex Koenigs, County Attorney, for appellee State.

Whitney L. Schiller, Decorah, guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**DOYLE, J.**

A mother, father, and child appeal the juvenile court's order adjudicating the child in need of assistance, claiming clear and convincing evidence did not support the statutory ground for adjudication. The father also challenges the admission of certain evidence relating to "past claims of abuse." We affirm on all appeals.

## I.    *Background Facts and Proceedings*

This family came to the attention of the Iowa Department of Human Services (DHS) in September 2013, on a report of repeated sexual abuse by the father upon fifteen-year-old, M.L.H. A DHS caseworker initiated contact with the family, as well as a family friend, Janet Gibbs. The caseworker learned that over the summer, the child had confided to Gibbs about her father coming into her bedroom at night and sexually abusing her. Shortly thereafter, the mother had taken M.L.H. and her younger siblings to Wisconsin for a month to stay with their grandmother. When they returned in mid-August, the mother put a lock on the child's door to keep the father out at night.

A DHS investigation ensued, and the Cresco Police Department became involved. During the caseworker's initial visit to the family home, the mother confirmed there were concerns of sexual abuse perpetrated by the father against the child. Another family friend was present who indicated she had been aware of the sexual abuse since June. The child's younger sister (who shared a room with her) confirmed she had observed the father sexually abusing M.L.H. "more than 5 times and likely more than 15 times" at night. Finally, the caseworker spoke with M.L.H., who stated her father had entered her bedroom at night

"probably more than 15 or 20 times" and touched her in her lower private area. The caseworker also observed a slide bolt lock screwed into the molding surrounding the child's bedroom door.

The child was taken to St. Luke's Hospital for an interview and medical examination at the Child Protective Center. During the interview, the child provided specific details of sexual abuse, including touching and oral sex acts performed by the father and one incident where he forced her to touch him. In October 2013, DHS completed a child protection assessment, issuing a founded report of sexual abuse perpetrated by the father.

Meanwhile, the father was arrested on a multiple counts of sexual abuse in the third degree and was taken to the Howard County Jail, and the process was begun to have him deported to Mexico. During an interview with police, the father denied sexually abusing the child but admitted instances of sleep walking and stated he was unaware of what he was doing during those times and such actions were possible.

Because the father had been arrested and was being deported (i.e., was no longer a danger to the child or her siblings), the State and DHS agreed a child-in-need-of-assistance petition would not be required.[1] That stance changed, however. First, during a December 2013 meeting with a service provider, M.L.H. stated her previous allegations were untrue and she had made them up because she was angry at her father for grounding her for an extended period in the summer. Then, during a March 2014 deposition, M.L.H. stated her

---

[1] The caseworker warned the mother not to allow the father in the home or foster care placement would become an option.

allegations against her father were untrue and stemmed from a scheme concocted by Janet Gibbs, based on Gibbs's statements that the family would benefit financially if the father was forced to leave the family home. The criminal case against the father was dismissed following the child's statements during the deposition, and he was released from custody.

On March 27, 2014, the State filed a petition alleging the child to be in need of assistance as a result of sexual abuse by the father, under Iowa Code section 232.2(6)(d) (2013). At the same time, DHS filed an addendum to its child protective assessment acknowledging the child's recantation but finding the report of sexual abuse was still founded, and stating although the weight of evidence was no longer as strong as before the child's recantation, a preponderance of evidence remained that the child was abused.

After a contested hearing,[2] the juvenile court found clear and convincing evidence supported the State's allegations and adjudicated the child in need of assistance under section 232.2(6)(d). The court continued the child's placement with the mother and ordered the child to continue to have no contact with the father. The father, mother, and child appeal.[3]

## II.     *Standard of Review*

We review the evidence in child-in-need-of-assistance adjudications de novo. *In re B.B.*, 500 N.W.2d 9, 11 (Iowa 1993). We examine both the facts and law and adjudicate anew those issues properly preserved and presented for review. *In re L.G.*, 532 N.W.2d 478, 480-81 (Iowa Ct. App. 1995). We accord

---

[2] The father and child contested adjudication. The guardian ad litem joined the State in seeking adjudication.
[3] Insofar as their claims on appeal overlap, we address them together.

considerable weight to the factual findings of the juvenile court, especially concerning the credibility of witnesses, but are not bound by those findings. *Id.* Our main concern lies with the child's welfare and best interests. *Id.* at 481.

## III. Discussion

The appellants claim the court erred in finding clear and convincing evidence supported adjudicating the child in need of assistance under section 232.2(6)(d).[4, 5] As their primary support for this claim, the appellants contend the court erred in concluding the child's recantation was "improperly influenced," and that the record lacks any "direct evidence" to support the court's ruling.

At the outset, we note the DHS child protective assessment was founded as to the father's sexual abuse of the child, even after the DHS caseworker issued an addendum acknowledging the child's recantation. The court also acknowledged the child's recantation of her initial allegations, but noted its "significant doubts about the veracity" of the child's reasons for allegedly concocting her initial claims of abuse. The court pointed out the "extremely leading questions" by the father's attorney during the deposition "[which] appeared to be a well-orchestrated effort to aid the child in recanting her allegations."[6]

---

[4] "'Child in need of assistance' means an unmarried child: . . . . Who has been, or is imminently likely to be, sexually abused by the child's parent, guardian, custodian, or other member of the household in which the child resides." Iowa Code § 232.6(d).

[5] The father raises this claim in Issue 3 of his brief on appeal; the mother and child raise it as their sole claim on appeal.

[6] The father challenges this and similar "factual findings" of the court in Issue 1 of his brief on appeal. In light of the considerable weight we accord to the factual findings of the juvenile court, especially concerning the credibility of the witnesses, we decline to address the father's claim on the issue. *See L.G.*, 532 N.W.2d at 480-81.

The court found M.L.H.'s "detailed statements about her abuse and her father's actions to keep her quiet about the abuse lend great credibility to her original claims." The court reached this finding upon determining the child's initial allegations of sexual abuse by her father had been assessed as credible and detailed by the investigators. Moreover, in general, "[c]ourts look at the entire set of circumstances and view recantations of testimony with great suspicion." *In re R.C.*, No. 02-0818, 2003 WL 183815, at *2 (Iowa Ct. App. Jan. 29, 2003) (affirming adjudication after the child's recantation of sexual abuse allegations against her step-father "[i]n spite of the fact that only the recantation was sworn testimony" (citing *State v. Folck*, 325 N.W.2d 368, 377 (Iowa 1982); *State v. Tharp*, 372 N.W.2d 280, 282 (Iowa Ct. App. 1985))). Giving proper deference to the court's credibility assessment, we find clear and convincing evidence supports a finding M.L.H. was sexually abused by her parent. *See* Iowa Code § 232.2(6)(d).

The father additionally contends the court erred in admitting "hearsay testimony" of the child and her younger sister "relating to past claims of abuse."[7] This challenged evidence was introduced in the form of the forensic interviewer's video recordings of interviews of the child and her sister, the forensic interviewer's summaries of those interviews, and the report of a DHS caseworker. Iowa Code section 232.96(6) governs the admissibility of these types of evidence. It states:

> A report, study, record, or other writing or an audiotape or videotape recording made by the department of human services, a juvenile court officer, a peace officer or a hospital relating to a child

---

[7] The father raises this claim in Issue 2 of his appellate brief.

in a proceeding under this division is admissible notwithstanding any objection to hearsay statements contained in it provided it is relevant and material and provided its probative value substantially outweighs the danger of unfair prejudice to the child's parent, guardian, or custodian. The circumstances of the making of the report, study, record or other writing or an audiotape or videotape recording, including the maker's lack of personal knowledge, may be proved to affect its weight.

Iowa Code § 232.96(6). The court overruled the father's motion in limine with regard to this evidence at the outset of the hearing.

Upon our review, we conclude the exhibits were clearly relevant and material to the question of the child's safety, a paramount consideration in a child-in-need of assistance action. *See id.* § 232.116(2); *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). Under these circumstances, we are also convinced the probative value of the evidence substantially outweighed the danger of unfair prejudice to the father. *See* Iowa Code § 232.96(6).

## *IV.* *Conclusion*

Clear and convincing evidence supports the statutory ground for adjudication under Iowa Code section 232.2(6)(d). We therefore affirm the adjudication of M.L.H. as a child in need of assistance.

**AFFIRMED ON ALL APPEALS.**